# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **J.S.-1**

**No. 18-0706** (Kanawha County 2018-JA-112)

**FILED**

**November 21, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.S.-2, by counsel Benjamin Freeman, appeals the Circuit Court of Kanawha County's June 28, 2018, order terminating his parental rights to J.S.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Matthew Smith, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent and terminating his parental rights without granting him an improvement period or considering other less-restrictive alternatives.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2018, the DHHR filed a child abuse and neglect petition against petitioner and the mother. According to the DHHR, law enforcement officers responded to petitioner's home where two children, J.S.-1 and his friend, were under the care of a babysitter. The children had gone to a neighbor's home and reported that their babysitter was passed out next to a spoon and a needle. The responding police officer was granted access to petitioner's home by petitioner's cousin, who had been released on parole and resided in the home. The officer awoke the babysitter, who appeared under the influence of drugs, and was completely unaware of the location of the children. The DHHR further alleged that petitioner was on probation for possession of heroin and had an extensive criminal history. Drug traffic in the home was also

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, we will refer to them as J.S.-1 and J.S.-2, respectively, throughout this memorandum decision.

generally alleged and K.D. reported witnessing the mother abuse drugs in the home.[2] In sum, the DHHR alleged that petitioner failed to provide J.S.-1 with the necessary food, clothing, supervision, housing, and financial support and was not sufficiently motivated or organized to care for the child on an ongoing basis.

Later in March of 2018, the circuit court held a preliminary hearing. The officer who responded to petitioner's home regarding the incident set forth in the petition offered testimony consistent with the allegations contained in the petition. The officer added that petitioner's cousin, a recent parolee, was residing in the home and was in the possession of marijuana, which the cousin provided to the officer. Petitioner testified that he was working the night of the incident and was unsure of who permitted the babysitter to watch the child. Petitioner reported that his cousin normally watched the child. Petitioner acknowledged that his cousin had a criminal history, but was unsure of the crime of which the cousin was convicted. Ultimately, the circuit court found probable cause that, at the time of the removal and the filing of the petition, imminent danger existed to the wellbeing of J.S.-1. The circuit court ordered petitioner to submit to random drug screening and participate in parenting and adult life skills classes.

The circuit court held an adjudicatory hearing in April of 2018 wherein it took notice of the testimony presented at the preliminary hearing. The DHHR proffered that petitioner left the child in the care of inappropriate persons under the influence of drugs. Further, petitioner failed to submit to drug screens since the preliminary hearing. The circuit court adjudicated petitioner as an abusing parent and ordered him to submit to a drug screen following the hearing.

In June of 2018, the circuit court held a dispositional hearing. Petitioner failed to attend the hearing but was represented by counsel. At the hearing, the circuit court noted that petitioner's drug screen following the adjudicatory hearing showed that he was positive for amphetamine, methamphetamine, fentanyl, and norfentanyl. A Child Protective Services ("CPS") worker testified that petitioner submitted to only one drug screen and attended just one or two parenting and adult life skills classes. After this limited participation, petitioner failed to contact the worker or further participate in any services. Following the presentation of evidence, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse as he made no efforts to rectify the circumstances leading to the filing of the petition. The circuit court further found that termination of petitioner's parental rights was in the child's best interests. It is from the June 28, 2018, dispositional order that petitioner appeals.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the

---

[2]K.D. is not petitioner's biological child but is the mother's child from a previous relationship. K.D. is in the care of her non-abusing father and is not the subject of this appeal.

[3]Both parents' parental rights were terminated below. J.S.-1 was placed in a relative's home with a permanency plan of adoption therein.

evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent. Specifically, petitioner states that the allegations in the petition were either not specific or did not apply to him. Rather, he asserts they were "inferences, innuendo, and suppositions" which were insufficient to support a finding of abuse and neglect. We disagree.

First, we find no error in the sufficiency of the allegations set forth in the petition. Pursuant to West Virginia Code § 49-4-601(b),

[t]he petition shall be verified by the oath of some credible person having knowledge of the facts. The petition shall allege specific conduct including time and place, how the conduct comes within the statutory definition of neglect or abuse with references thereto, any supportive services provided by the department to remedy the alleged circumstances and the relief sought.

Moreover,

[i]n a juvenile neglect petition brought pursuant to Chapter 49 . . . of the Code of West Virginia . . . the allegations of fact are adequate if they are sufficiently specific to inform the custodian of the infants of the basis upon which the petition is brought, and thus afford a reasonable opportunity to prepare a rebuttal.

Syl. Pt. 2, in part, *State ex rel. Moore v. Munchmeyer*, 156 W.Va. 820, 197 S.E.2d 648 (1973). Here, the petition indicated that petitioner was the biological father of the child; he resided with the mother; he and the mother had been previously convicted on drug-related charges; and the child was left in the care of an adult babysitter who was passed out under the influence of drugs, forcing the child to leave the home and seek help. While petitioner is correct that the petition did not specifically state that he left the child in the babysitter's care, the fact remains that petitioner was the child's father and was responsible for ensuring proper care and supervision for the child. As such, we find that the petition was sufficiently written to provide petitioner notice of the allegations against him.

Second, we find no error in the circuit court's adjudication of petitioner as an abusing parent. We have previously noted as follows:

> At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W.Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at 777 (citing *Brown v. Gobble*, 196 W.Va. 559, 564, 474 S.E.2d 489, 494 (1996)). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* at 546, 759 S.E.2d at 777 (quoting *Cramer v. W.Va. Dep't of Highways*, 180 W.Va. 97, 99 n.1, 375 S.E.2d 568, 570 n.1 (1988)).

Pursuant to West Virginia Code § 49-1-201, an "'[a]busing parent' means a parent . . . whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect." Further, a

> "'[n]eglected child' means a child: (A) [w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian[.]"

*Id.* Here, the record establishes that petitioner knew, or should have known, of the ongoing substance abuse in his home. Petitioner and the mother were previously convicted of drug-related charges and K.D. reported witnessing her mother abuse drugs frequently in the home. Further, petitioner's cousin lived in the home and possessed marijuana in the presence of the child, and the child's babysitter, who was found under the influence of drugs, was the cousin's fiancée and was frequently present in the home. Accordingly, with express knowledge of drug use by those frequently in the home, petitioner left J.S.-1 in their care. As such, we find that sufficient evidence existed to adjudicate petitioner as an abusing parent due to his failure to provide adequate supervision by leaving the child in the care of inappropriate persons under the influence of drugs.

Petitioner next argues that the circuit court erred in terminating his parental rights without granting him an improvement period or employing a less-restrictive alternative. We find no merit in petitioner's argument. We have held that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements."). We have further held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and

convincing evidence, that the [parent] is likely to fully participate in the improvement period. . . .'" *In re Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Here, although petitioner was not granted a formal improvement period, the circuit court ordered services such as random drug screens, parenting and adult life skills classes, and supervised visitation. However, petitioner submitted to only one drug screen and participated in no more than two parenting and adult life skills classes. Thereafter, he failed to contact the CPS worker or further participate in the proceedings. Due to petitioner's failure to submit to drug screens, he was unable to participate in supervised visitation with the child. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W.Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citing *Tiffany Marie S.*, 196 W.Va. at 228 and 237, 470 S.E.2d at 182 and 191 (1996); *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 259, 470 S.E.2d 205, 213 (1996)). Based on the evidence presented above, we find that petitioner failed to demonstrate that he was entitled to an improvement period.

We further find no error in the circuit court's decision to terminate petitioner's parental rights. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) clearly indicates that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child. . . .

The record demonstrates that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. Petitioner failed to participate in any of the services offered to him. Petitioner tested positive for amphetamine, methamphetamine, fentanyl, and norfentanyl following the adjudicatory hearing, submitted to only one drug screen thereafter, and failed to participate in parenting and adult life skills classes or supervised visitation. Petitioner did not attend the dispositional hearing or offer any evidence to show that he corrected the issues the led to the filing of the petition. Accordingly, we find that petitioner failed to respond to services which were designed to correct the conditions of abuse. To the extent that petitioner argues the circuit court should have employed a less-restrictive alternative, we note that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the

5

use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va. Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Because petitioner failed to participate in services or meaningfully address the issues giving rise to the petition, we find that there was no reasonable likelihood that he could correct the condition of abuse and neglect in the near future and that termination was necessary for the child's welfare.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 28, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 21, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment